## SAN ANTONIO TRACTION COMPANY v. ALTGELT.

IN ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH
SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 131.　Argued December 13, 1905.—Decided January 22, 1906.

Even though an ordinance extending a franchise may be construed as a
contract, it is still subject to the control of the legislature if the consti-
tution of the State then in force provides that no irrevocable or uncon-
trollable grant of privileges shall be made and that all privileges granted
by the legislature, or under its authority, shall be subject to its control;
nor is the legislature deprived of this control because the contract was
not made by it but by a municipal corporation, as the latter is for such
purpose merely an agency of the State.

Where, after a new constitution has been adopted, a railway, chartered
prior to such adoption, is consolidated with other roads or accepts new
privileges, all contracts, privileges and franchises conferred are subject
to the provisions of the new constitution.

Where a corporation chartered prior to the existing constitution of a State
is wound up and all of its property, contracts and obligations transferred
by ordinance to a new corporation, the ordinance must be construed in
connection with the constitution and the provisions for further control
therein contained.

THIS was a petition by Altgelt, suing by his next friend, origi-
nally filed in the District Court of Bexar County, for a per-
emptory mandamus against the Traction Company, a Texas
corporation operating a street railway system, commanding it
to issue to the plaintiff twenty half-fare street car tickets upon
the payment of fifty cents, the same being at the rate of two
and a half cents per ticket.

Both parties relied upon the legal effect of certain legislation
of the State of Texas hereafter set forth. The mandamus was
granted by the District Court, whose action was affirmed by
the Court of Civil Appeals. An application for a writ of error
from the Supreme Court was denied.

*Mr. Charles W. Ogden* for plaintiff in error.

There was no appearance for defendant in error.

Mr. Justice Brown, after making the foregoing statement, delivered the opinion of the court.

This case depends upon the construction and validity of certain legislative acts of the State of Texas from 1874, the date of the original charter, to 1903, the date of the act complained of as an impairment of the Traction Company's contract.

The Constitution of 1869, in force at the time the original company was chartered, contained no limitation upon the power of the legislature to grant franchises in towns, cities and other subdivisions of the State. The San Antonio Street Railway Company was incorporated in 1874 by special act, in which it was provided, section 8, that "all contracts made and entered into between the mayor and aldermen of the city of San Antonio and said company, or any privileges and rights granted . . . . to said company, shall be, in all respects legal and binding on the aforesaid contracting parties," and by section 9, that the charter "shall remain in full force and effect for the period of fifty years."

By ordinance of the city council of October 5, 1875, privilege was granted to the San Antonio Street Railway Company to construct a first class horse railway, during the term of its charter, upon the streets of said city upon certain routes; but the ordinance did not fix the rate of fare to be charged for the transportation of persons over its projected lines.

By article X, section 7, of the constitution of Texas of 1876, it was provided that "no law shall be passed by the legislature granting the right to construct and operate a street railway within any city, town or village, or upon any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by said railway."

Section 17 of article I of the bill of rights of the same constitution provides that "no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the legislature, or

created under its authority, shall be subject to the control thereof."

On March 16, 1899, twenty-three years after the adoption of this constitution, an ordinance of the city was passed granting an extension of time to the San Antonio Street Railway, and the San Antonio Edison Company, and imposing certain limitations upon the exercise of their franchises, among which was that "*said street railway companies shall charge five cents fare for one continuous ride over any one of their lines, with one transfer to or from either line to the other.*"

It was also provided, by section 11 of the same ordinance, that "the rights, privileges and franchises, or either of them herein referred to and hereby extended, may be assigned by the grantee or grantees to any person or corporation, and the limitations of this ordinance shall apply to the assignee thereof."

On April 4, 1900, all the property of this company was sold under the decree of a state court to a trustee for the stockholders, subject to the payment of the debts of the company, and to the performance of all outstanding contract obligations, which were declared "a preference lien" against all the property sold in the hands of the purchaser. The conveyance expressly stipulated that "within the meaning of the words 'contract obligations' shall be understood any and all existing contracts of the said San Antonio Street Railway Company for street railway service over its road, or any portion thereof, had with any person or persons, now binding on said street railway company."

On August 7, 1900, the common council of the city passed an ordinance reciting the sale of the property and privileges of the former corporations, the San Antonio and Edison Companies, to the Traction Company, and enacting that all the rights and privileges theretofore granted to the former companies, which were said to be "now defunct," with all the limitations, duties, contracts and obligations imposed and required of the said San Antonio Street Railway Company were

imposed upon the Traction Company. This ordinance was accepted.

The legislation remained in this condition until April 10, 1903, when the legislature of the State passed a new act, the second section of which reads as follows:

"SEC. 2. All such persons or corporations owning or operating street railways, shall sell or provide for the sale of tickets in lots of twenty, each good for one trip over the line or lines owned or operated by such person or corporation, at and for one-half the regular fare or charge collected for the transportation of adult persons, to students not more than seventeen years of age, in actual attendance upon any academic public or private school, of grades not higher than the grades of the public high schools of this State, situated within or adjacent to the town or city in which such street railway is located. Such tickets are required to be sold only upon the presentation by the student desiring to purchase the same, of the written certificate of the principal of the school upon which he is in attendance, showing that he is not more than seventeen years of age, is in regular attendance upon such school, and is within the grades hereinbefore provided. Such tickets are not required to be sold to such students, and shall not be used except during the months of the year when such schools are in actual session, and such students shall be transported at half fare only upon the presentation of such tickets."

It is insisted by the plaintiff in error that, under section 7, article X, of the state constitution, above quoted, the power to grant street railways the property rights and franchises, to construct and operate a street railway within a city, is withdrawn from the legislature and conferred, if not by express words, then by necessary implication, upon the municipal authorities. We do not so read the section. It merely provides that no such law shall be passed by the legislature granting the right to construct and operate a street railway without first acquiring the consent of the local authorities, but we see nothing to prevent the legislature from chartering a street railway,

provided such consent be acquired. Such we understand to be the ruling of the Supreme Court of that State in *Taylor* v. *Dunn*, 80 Texas, 652, 659, and *Mayor* v. *Houston Street Railway Company*, 83 Texas, 548. But whether an act of the legislature be necessary to charter a street railway is not involved in this case, as we are cited only to the original charter of the San Antonio Street Railway Company of 1874; although it is clear that a new charter would be inoperative to authorize the construction of the road without the consent of the municipal authorities.

Assuming, but not deciding, that the ordinance of March 16, 1899, extending the franchise of the San Antonio Street Railway, and imposing certain limitations, constituted a contract *pro tanto*, the question still remains whether the provision "that said street railway companies shall charge five cents fare for one continuous ride over any one of their lines, with one transfer to or from either line to the other," constituted a contract with respect to which no further legislation upon that subject could be enacted without impairing its obligation. Even if construed as a contract, it was still subject to the provisions of the constitution of 1876, which in section 17 of the bill of rights declared that no irrevocable or uncontrollable grant of special privileges or immunities should be made; but that all privileges granted by the legislature or created under its authority shall be subject to the control thereof.

An important consideration in this connection is that the alleged contract was made twenty-three years after the constitution of 1876 was adopted, declaring that all privileges granted by the legislature shall be subject to its control. Clearly it was not deprived of that control by the fact that the contract was not entered into by the legislature itself, but by a municipal corporation, since that is but an agency of the State, to which is delegated the power to regulate street railways and other municipal franchises. We have repeatedly held that where a railway was originally chartered before a new constitution took effect (and hence such charter was not limited

thereby), yet if such road be subsequently consolidated with other roads, or accepts new privileges, after a new constitution takes effect, all contracts, privileges and franchises ·conferred after the adoption of such constitution are subject to its provisions. *Shields* v. *Ohio*, 95 U. S. 319; *Railroad Co.* v. *Maine*, 96 U. S. 499; *Railroad Co.* v. *Georgia*, 98 U. S. 359; *Keokuk &c. R. R.* v. *Missouri*, 152 U. S. 301; *Yazoo &c. Railroad Co.* v. *Adams*, 180 U. S. 1, 23.

In this case not only did the original San Antonio Street Railway Company become extinct by the foreclosure and sale of its property, but under the ordinance of August 17, 1900, declaring the prior companies to be "now defunct," the Traction Company also became the owner of all the property, assets, rights and privileges of another company, known as the San Antonio Edison Company, which thus became absorbed with the street railway company in the new corporation known as the Traction Company, which is admitted to have been incorporated since 1876, though the charter is not in the record. We are clearly of the opinion that under these circumstances it received its franchise under the constitution of 1876, which forbade either the legislature or the municipal authorities to make any irrevocable contract.

It is true that in this ordinance it was provided that all rights and privileges previously granted to the Street Railway Company and the Edison Company were conferred unto the Traction Company, including all the limitations, contracts and obligations, but this ordinance must be construed in connection with the constitution of 1876, which made all such privileges and franchises subject to the control thereof. Such was the view taken by the Court of Civil Appeals of Texas in this case, which expressly waived the question whether the provision of the former ordinance fixing a five-cent fare constituted a contract or not, declaring that if it did it was subject to further legislative control.

"Under the bill of rights of that constitution the legislature could not reduce the fares to a confiscatory amount or to an

amount which would render it unprofitable to operate the road. There is no allegation of that kind in this bill, and no evidence that the reduction of the school tickets in question would seriously impair its revenues. Indeed, it was found in the opinion of the court below that it was not contended there, and that there was nothing in the evidence tending to show, that the rate of fare claimed by the appellee under the act of 1903 is not such as to leave to the company a sufficient income to pay for repairs and a fair income on its investment.

The judgment of the Court of Civil Appeals is

*Affirmed.*