SAN FRANCISCO–OAKLAND TERMINAL RYS. v. CITY OF ALAMEDA
et al.

(District Court, N. D. California, S. D.   June 8, 1914.)

No. 39.

1. MUNICIPAL CORPORATIONS ⟨Key⟩58—POWERS—IMPLICATION.

While the state may authorize a municipality to bind itself and establish by inviolable contract rates to be charged by a public service corporation, such power must clearly and unmistakably appear, and all doubts will be resolved against such contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147; Dec. Dig. ⟨Key⟩58.]

2. MUNICIPAL CORPORATIONS ⟨Key⟩232—STREET RAILROADS—FARES—POWER OF MUNICIPALITY.

Municipal Corporations Act (St. Cal. 1883, p. 253) art. 3, § 764, authorizes the boards of trustees of municipalities to pass ordinances not in conflict with the state laws, to permit the construction of street car tracks, and to do any other act to enforce local police and sanitary regulations. Civ. Code Cal. §§ 497, 501, 503, 507, respectively provide for the construction of street railways upon terms fixed by the city, fix the maximum fares, authorize the municipality to make further regulations, and provide for the physical construction of the road. St. Cal. 1897, p. 1061, § 17, subd. 23, which is the charter of the city of Alameda, authorizes the council to fix, alter, regulate, and control fares and rates on all cable, electric, steam, or other railways in the city using the streets. *Held*, that such statutes did not give the city power to fix the rates by an inviolable contract precluding subsequent reductions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 665; Dec. Dig. ⟨Key⟩232.]

3. CONSTITUTIONAL LAW ⟨Key⟩42—DISCRIMINATORY LEGISLATION—PERSONS ENTITLED TO COMPLAIN.

A street car company, not being itself injured, cannot complaint that an ordinance fixing a less rate of fare for school children than the general public discriminated against the rights of persons under the age of 21 years who were not school children.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. ⟨Key⟩42.]

In Equity.   Bill by the San Francisco-Oakland Terminal Railways, a corporation, against the City of Alameda and others.   Bill dismissed.

W. H. Smith, of Oakland, Cal., and George W. Mordecai, of San Francisco, Cal., for plaintiff.

Samuel Poorman, Jr., of San Francisco, Cal., for defendants.

VAN FLEET, District Judge.   This is a motion to dismiss the bill as to the first count, which seeks to have annulled an ordinance of the defendant municipality, wherein plaintiff operates street railroads, fixing rates of fare for such railroads to be charged school children at a figure less than those charged the general public, upon the ground (1) that its effect is to impair the obligation of contracts existing between plaintiff and the city under ordinances previously in force; and (2) that it is unlawfully discriminating.

[1] In my opinion the case as to the first point is ruled by the prin-

ciples announced in Home Telephone Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176, and the cases there cited. It is there held and reiterated from previous decisions that, while the state may authorize a municipal corporation to bind itself and "establish by an inviolable contract the rates to be charged by a public service corporation" within certain limitations, as such a contract "has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and. all doubt must be resolved in favor of the continuance of the power"; that "the surrender by contract of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized"; that "the general powers of a municipality, or of any other political subdivision of the state, are not sufficient; specific authority for that purpose is required"; in other words, that neither the existence of the contract nor the power to make it is to be deduced by means of refined construction of terms or shadowy implication from general language, but must appear from the plain and unequivocal expression of such purpose.

[2] Tested by these principles, the bill in my judgment fails to disclose a case in which the defendant city had the power, at the time of the adoption of any of the ordinances here involved, to conclude itself by contract from exercising its rate-fixing power by lowering the rates fixed by such ordinances, even if their language can be construed as evidencing any such purpose. The city of Alameda was reincorporated as a city of the fifth class in 1884 under general statutes (Municipal Corporations Act, St. 1883, pp. 93, 250), under which it existed until the taking effect of a freeholders' charter adopted in 1896 and approved by the Legislature February 7, 1907 (St. 1907, p. 1051), by which it has since been governed; and all the ordinances in question were adopted subsequently to such reincorporation—some of them prior and some subsequently to the adoption of its present charter. No attempt is made by plaintiff to point out in any general statute governing its powers or in its charter any specific grant of authority to the city to contract away, even for a limited time, the governmental power of rate regulation; but the argument is that such authority is to be implied from the powers expressly conferred, and the want of any express reservation against the right to contract, as to such rates But it will be readily seen that, within the limitations of the above-stated principles, no such implication can be predicated of the language employed by the Legislature in any expression it has given upon the subject.

The provisions relied upon by plaintiff from which it seeks to deduce the authority contended for are found in the Municipal Corporations Act above referred to, the Civil Code, and the present charter of the defendant city. The only provisions of the first-named act bearing either directly or remotely upon the subject are found in article 3, section 764, defining the powers of the board of trustees of the municipality as follows:

"First. To pass ordinances not in conflict with the Constitution and laws of this state, or of the United States."

"Thirteenth. To permit, under such restrictions as they may deem proper, the laying of railway tracks, and the running of cars drawn by horses, steam, or other power thereon, and the laying of gas and water pipes in the public streets; and to construct and maintain and to permit the construction and maintenance of telegraph and telephone lines therein."

"Nineteenth. To do and perform any and all other acts and things necessary or proper to carry out the provisions of this chapter, and to exact and enforce within the limits of such city all other local, police, sanitary, and other regulations as do not conflict with general laws."

The pertinent provisions of the Civil Code are these:

"Sec. 497. Authority to lay railroad tracks through the streets and public highways of any incorporated city, city and county, or town, may be obtained for a term of years not exceeding fifty, from the trustees, council, or other body to whom is intrusted the government of the city, city and county, or town, under such restrictions and limitations, and upon such terms and payment of license tax, as the city, city and county, or town authority may provide."

"Sec. 501. The rates of fare on the cars must not exceed ten cents for one fare for any distance under three miles, and in municipal corporations of the first class must not exceed five cents for each passenger per trip of any distance in one direction either going or coming, along any part of the whole length of the road or its connections," etc.

"Sec. 503. Cities and towns in or through which street railroads run may make such further regulations for the government of such street railroads as may be necessary to a full enjoyment of the franchise and the enforcement of the conditions provided herein."

"Sec. 507. In every grant to construct street railroads, the right to grade, sewer, pave, macadamize, or otherwise improve, alter, or repair the streets or highways, is reserved to the corporation, and cannot be alienated or impaired; such work to be done so as to obstruct the railroad as little as possible, and, if required, the corporation must shift its rails so as to avoid the obstructions made thereby."

The pertinent provision in the present charter of the defendant city is found in subdivision 23 of section 17, as follows:

"To fix, alter, regulate and control fares and rates on all cable, electric, steam or other railways within the city; to compel the owners of two or more such roads using the same street for a distance not exceeding five blocks to use the same tracks and to equitably divide the cost of construction and maintenance thereof; to regulate rates of speed and to protect the public from danger or inconvenience in the operation of such roads; to erect, construct and maintain all buildings and appurtenances necessary to the operation of such roads as may be hereafter owned or controlled by the city."

It is apparent that these provisions, especially those of the Civil Code and the charter, while undoubtedly conferring power upon the city to regulate rates, are wholly wanting in any expression either directly or by implication indicating a purpose on the part of the Legislature to authorize a municipality to restrict or barter away the power there given. As aptly said by the Supreme Court in the Home Telephone Case, in considering the like provisions of the Los Angeles charter:

"This is an ample authority to exercise the governmental power of regulating charges, but it is no authority to enter into a contract to abandon the governmental power itself. It speaks in words appropriate to describe the

authority to exercise the governmental power, but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement. Doubtless an agreement as to rates might be authorized by the Legislature to be made by ordinance. But the ordinance here described was not an ordinance to agree upon the charges, but an ordinance 'to fix and determine the charges.' It authorizes the exercise of the governmental power and nothing else."

That case, moreover, gives full consideration to the leading authorities relied on by plaintiff to sustain the views advanced here, and it is shown that in each of them there was either an express grant of the power to contract or a legislative confirmation of the ordinance containing the elements of a contract; that in none of them was the right to contract rested upon implication. It is unnecessary, therefore, to further review those cases here. It need only be said that they are not applicable to the case made by this bill. See, also, Stanislaus County v. San Joaquin, etc., Canal Co., 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406; San Antonio Co. v. Altgelt, 200 U. S. 304, 26 Sup. Ct. 261,50 L. Ed. 491; Interstate, etc., R. R. Co. v. Commonwealth, 207 U. S. 79, 28 Sup. Ct. 26, 52 L. Ed. 111, 12 Ann. Cas. 555; Missouri Pacific Ry. Co. v. Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472.

Being satisfied from these considerations that plaintiff's bill does not present a case where the city was authorized to bind itself by contracts such as those alleged, it is unnecessary to consider whether the several ordinances counted upon or any of them contain language which could be given that effect.

[3] As to the second objection, that the ordinance here assailed is discriminatory, and denies to persons under 21 years of age not attending the public schools the equal protection of the law, by giving to school children special privileges not accorded to others, it is sufficient to say that, if there be anything in the objection, it does not lie with plaintiff to invoke it. It is not claimed that the ordinance is discriminatory as to plaintiff.

The motion to dismiss is granted.