SAN ANTONIO PUBLIC SERVICE CO. v. CITY OF SAN ANTONIO et al.

(District Court, W. D. Texas, San Antonio Division. February 15, 1919.)

No. 214.

CARRIERS ⊜12(9)—CONSTITUTIONAL LAW ⊜135—FRANCHISE ORDINANCE—PROVISION FIXING RATES—CONTRACT.

Under Const. Tex. 1876, Bill of Rights, § 17, providing that no irrevocable or uncontrollable grant of special privilege or immunities shall be made, but all privileges granted by the Legislature or created under its authority shall be subject to the control thereof, a city having power under its charter "exclusively to * * * regulate everything connected with city railroads" is without authority to make an irrevocable contract fixing the rate of fare in an ordinance granting a franchise to a street railroad company, and such provision is regulatory only, subject to change by the city to protect the public from excessive charge for service, and to the constitutional right of the company to earn a fair return on its investment.

In Equity. Suit by the San Antonio Public Service Company against the City of San Antonio and others. On motion of defendants to dismiss bill. Overruled.

Templeton, Brooks, Napier & Ogden, of San Antonio, Tex., for complainant.

Wm. Aubrey, R. J. McMillan, City Atty., and R. P. Ingrum, Asst. City Atty., all of San Antonio, Tex., for defendants.

WEST, District Judge. The San Antonio Public Service Company, plaintiff, brings suit against the city of San Antonio and its mayor, city commissioners, and city attorney, defendants. Plaintiff will be referred to as "Company" and defendants as the "City."

Company complains that without fault and for causes beyond its control, set out in great detail, it is unable to earn a fair return upon its investment, unless permitted to charge a greater carriage fare than 5 cents per passenger as now fixed by City's ordinance; that on March 28, 1918, the City passed an ordinance prohibiting any public utility company from raising its rates without first obtaining consent of the City so to do; that Company, on August 29, 1918, sought consent to raise its fare to 6 cents per passenger, which was denied by the City in October, 1918, by an ordinance prohibiting a fare charge in excess of 5 cents, and imposed a penalty of misdemeanor by fine and forfeiture of franchise right for any violation; that Company desires to raise the rate of fare to 7 cents per passenger, or to such other sum as the court may find necessary to enable Company to fulfill its duties and obligations as a common carrier, and at the same time earn a fair return upon its investment; that the enforcement of the ordinance prevents Company from increasing its rates, and forces it to dedicate its property to public use, depriving it thereof without due process of law, in violation of the Constitution of the United States.

Company prays: (1) That the court determine (a) whether Company can earn a fair return from a 7-cent fare, and, if not (b) to fix a rate of fare that would enable it to do so; and (2) in the meantime the City be enjoined from carrying into effect the provisions of the two ordinances.

The City moves to dismiss Company's complaint because from Company's petition it appears that Company, as successor to the San Antonio Traction Company, was obligated to transport passengers for a 5-cent fare, and that such ordinance constitutes, in effect, a valid contract between the Company and the City, the enforcement of which was being demanded of the Company; therefore the action of the City in refusing to permit Company to raise its fare could not be a taking of its property without due process of law. The ordinance (1899) under consideration provided:

"Said street car companies shall charge five cents fare for one continuous ride over any one of their lines, with one transfer to or from either line to the other."

In 1903 (Acts 28th Leg. c. 116) the Legislature of the state passed what is known as the "half fare" law, requiring street railways to transport students of schools, under 17 years of age, at one-half the fare required of adults. Altgelt filed suit against the San Antonio Traction Company, predecessor of Company, to compel it to carry students at half fare as provided by the act. The Traction Company contended that the 1899 ordinance constituted a contract with City guaranteeing, during the life of its franchise, a vested right to a return of 5 cents fare for each passenger; that the statute sought to be enforced would impair the obligation of such contract by requiring the Traction Company to perform the service for a less charge than fixed by the ordinance, consequently violative of the Constitution, void, and unenforceable as to the contract in question. This contention was insistently urged by the Traction Company in the

trial court, the Court of Civil Appeals, and in the Supreme Court of the United States, but those courts did not consider that question determinative of the issue. The latter court (San Antonio Traction Co. v. Altgelt, 200 U. S. 308, 309, 26 Sup. Ct. 263, 264, 50 L. Ed. 491), referring to this particular ordinance, says:

"Even if construed as a contract, it was still subject to the provisions of the Constitution of 1876, which in section 17 of the Bill of Rights declared that no irrevocable or uncontrollable grant of special privilege or immunities should be made, but that all privileges granted by the Legislature or created under its authority shall be subject to the control thereof."

The court further declares:

"Under the Bill of Rights of that Constitution the Legislature could not reduce the fares to a confiscatory amount or to an amount which would render it unprofitable to operate the road"

—the Traction Company, however, making no claims of that character in that case (but it does so in the present case)—and finally holding that the Traction Company must issue the half fare tickets, notwithstanding the terms of the ordinance fixing the fare at 5 cents.

The Company contends here that this decision in effect holds that the ordinance in question does not bring into being the contractual relation in the legal sense, but construes the words "shall charge five cents" fare as being mandatory, and regulatory in character, subject to the right of revision by the state, and also subject to the constitutional right of the Company to earn a fair return upon its investment.

The City urges that the contractual relation does exist by virtue of the ordinance, thus limiting the maximum fare to be charged by Company, in any event, to 5 cents, subject to revision by the state. Under this construction the Company would be required to maintain and operate its railroad, charged with its full duty as a common carrier, even though forced to bankruptcy.

The court concedes that, if the contractual relation exists as insisted upon by the City, the rule may not be overstated, and the Company may not ask the court to rewrite, reform, or vary the terms of a lawful obligation, voluntarily undertaken, and the petition should be dismissed.

The power and authority of the City to contract for and fix rates during the term of the Company's franchise, if any such power existed, is shown by the charter in effect at the time of the passing of the 1899 ordinance. Only section 100 of that charter is material. It grants power—

"exclusively to prevent, control and regulate everything connected with city railroads, and to make such rules and regulations for the same as the city council may deem necessary."

The power to "regulate everything connected with city railroads" thus unrestricted would include authority to contract for and fix rates, were it not for the bar interposed by the provisions of section 17 of the Bill of Rights of the Constitution of 1876, declaring that no ir-

revocable grant of special privilege or immunity could be made, but should be subject to legislative control. The grant of a right to a city railroad to charge a fixed sum as a passenger fare during the life of its franchise is an irrevocable grant of special privilege, expressly prohibited by the Constitution.

The City contends that, even if there be an exercise of excess powers, a contract pro tanto nevertheless exists, binding upon the parties, subject to the right of the state to fix and regulate rates, resting this proposition on City of Manitowoc v. Manitowoc & Northern Traction Co., 145 Wis. 25, 129 N. W. 925, and Milwaukee v. Railroad, 153 Wis. 592, 142 N. W. 491, L. R. A. 1915F, 744, Ann. Cas. 1915A, 911. These cases turn upon the construction of two sections of the Wisconsin Statutes, The ordinance in its terms in the latter case is substantially of like effect as in the case at bar. The court held that such an ordinance did not constitute a contract. The City also cites authorities supporting this contention from states where municipalities have been authorized to make inviolable contracts as to rates. Detroit v. Detroit Citizens' St. Ry., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Vicksburg v. Water Co., 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155. But for the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power. Providence Bank v. Billings, 4 Pet. 514, 561, 7 L. Ed. 939; Railroad Commission Cases, 116 U. S. 307, 325, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; Vicksburg, etc., Railroad Co. v. Dennis, 116 U. S. 665, 6 Sup. Ct. 625, 29 L. Ed. 770; Freeport Water Co. v. Freeport City, 180 U. S. 587, 599, 611, 21 Sup. Ct. 493, 45 L. Ed. 679; Stanislaus County v. San Joaquin C. & I. Co., 192 U. S. 201, 211, 24 Sup. Ct. 241, 48 L. Ed. 406; Metropolitan Street Ry. Co. v. New York, 199 U. S. 1, 25 Sup. Ct. 705, 50 L. Ed. 65, 4 Ann. Cas. 381. And see Water, Light & Gas Co. v. Hutchinson, 207 U. S. 385, 28 Sup. Ct. 135, 52 L. Ed. 257.

It is obvious that no case, unless it is identical in its facts, can serve as a controlling precedent for another, for differences slight in themselves may, through their relation with other facts, turn the balance one way or the other. Illustrations of the truth of this may be found in the cases of Freeport Water Co. v. Freeport City, supra, Rogers Park Water Co. v. Fergus, 180 U. S. 624, 21 Sup. Ct. 490, 45 L. Ed. 702, and Knoxville Water Co. v. Knoxville, 189 U. S. 434, 23 Sup. Ct. 531, 47 L. Ed. 887, where no authorized contract was found, as contrasted with Detroit v. Detroit Citizens' St. Ry. Co., supra, and Cleveland v. Cleveland City Ry. Co, 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102, where a contrary conclusion was reached.

The Milwaukee Case was taken to the Supreme Court of the United States (Milwaukee v. Railroad, 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254), and judgment affirmed as being the "judicial interpretation of a state statute by the highest court of the state." The court was careful to further limit the effect of its affirmance by use of the following language (238 U. S. 178, 35 Sup. Ct. 821, 59 L. Ed. 1254):

"On hearing in the court of first instance, it was held that there was no contract made by the passage and acceptance of the ordinance which we have quoted, and the complaint was * * * dismissed. Upon appeal to the Supreme Court of Wisconsin, that judgment was affirmed. * * * In the view we take of the case it is unnecessary to pass upon the question whether the ordinance had the effect to make a contract binding between the city and the company until subsequent legislative action by the state."

The United States Supreme Court in the Altgelt Case, 200 U. S. 308, 26 Sup. Ct. 261, 50 L. Ed. 491, expressly declined to decide that this very ordinance constituted a contract pro tanto, being practically the same reservation made by the same court in the Milwaukee Case.

That the 1899 ordinance does not constitute a contract is confirmed by a like construction given to an ordinance of identical effect in Home Telephone Co. v. Los Angeles, 211 U. S. 274, 277, 278, 29 Sup. Ct. 54, 53 L. Ed. 176. The court in that case, after reviewing authorities relied on by the city, says:

"All these cases agree that the legislative authority to the municipality to make the contract must clearly and unmistakably appear. It does not so appear in the case at bar. The appellant has failed to show that the city had legislative authority to make a contract of exemption from the exercise of the power of regulation conferred in the charter. It therefore becomes unnecessary to consider whether such a contract in fact was made."

The City in the present case fails to show that it had legislative authority to make the contract it alleges was made with the Company, because the inhibition of the Constitution of 1876 against irrevocable grants of privilege stands squarely in the way, and as stated by the United States Supreme Court, last quoted, it becomes unnecessary to consider whether such a contract was in fact made. Home Co. v. Los Angeles practically holds that. The ordinance there in question (1) did not state a contractual relation; and (2) if so, the city was without authority to make such a contract. A like condition exists here. The ordinance of 1899, and its acceptance by the Company did not constitute a contract, but, even if that were possible, the City lacked the power and authority to make it.

The City insists that at the time of the consolidation ordinance, July, 1917, the City had the power by constitutional amendment, and the Home Rule Act passed pursuant thereto, to fix rates and make irrevocable contracts. Even if this be true, no material change has been made in the verbiage of the original ordinance of 1899 by the consolidated ordinance, so far as the city railroad is concerned. As was said by the United States Supreme Court in Home Co. v. Los Angeles, 211 U. S. 274, 29 Sup. Ct. 52, 53 L. Ed. 176, referring to an ordinance of like terms and effect, equally applicable here:

"It speaks in words appropriate to describe the authority to exercise the governmental power, but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement. * * * The ordinance here described was not an ordinance to agree upon the charges. * * * It authorizes the exercise of the governmental power and nothing else."

For the purpose of the motion to dismiss, the allegations of the complainant's bill are assumed to be true. There can be no doubt that a cause of action for equitable relief is stated in the bill, unless

the rights of parties are expressed by contract. The court is of opinion that no contract is shown to exist by the ordinance set out, but that the rights of parties are controlled by the terms of the ordinances as enactments of law regulating the conduct of a public servant. The City retains ample power to protect the public against excessive charge for service; the Company, by the terms of the Constitution, is guaranteed against confiscation of its property rights by regulation which would require its use by the public without a fair return upon the outlay.

The motion to dismiss the complainant's bill will be overruled, and defendant City may file further answer thereto within ———— days from this date.

A formal order in accordance with this memorandum opinion will be entered of record in due course.