**GULF STATES UTILITIES CO. v. INCOR-PORATED TOWN OF HEMPSTEAD et al.**

No. 11814.

Court of Civil Appeals of Texas. Galveston.

Dec. 5, 1946.

Rehearing Denied Jan. 9, 1947.

Baker, Botts, Andrews & Walne, of Houston, Pitts & Liles, of Conroe, and Orgain, Bell & Tucker, of Beaumont (B. D. Orgain, of Beaumont, of counsel), for appellant company.

W. H. Betts, of Hempstead, Vinson, Elkins, Weems & Francis and Victor W. Bouldin, all of Houston, for appellee town.

GRAVES, Justice.

This admittedly correct statement is taken from appellant's brief:

"This suit was instituted by the Gulf States Utilities Company to enjoin the Incorporated Town of Hempstead, its mayor, and the members of its Board of Commissioners, from enforcing an ordinance of the town requiring the plaintiff company to remove its electric power lines from the streets and alleys of the town. The town, by a cross-action, sought a mandatory injunction ordering the company to remove its lines. In a trial on the merits, before the court without a jury, judgment was rendered denying the injunction sought by the company, and granting the mandatory injunction sought by the town. However, the

judgment provided that no writ of injunction should issue on the mandatory injunction against the company until 90 days after judgment should become final, and further ordered that upon filing of bond by the company (which was done), writ of injunction should issue restraining the town and its officers from enforcement of the penal provisions of the town ordinance, pending final determination of the cause. There was no motion for new trial. The Town appealed from that portion of the Judgment restraining the enforcement of the ordinance pending finality of judgment, and the company perfected appeal from the balance of the judgment."

At the hands of this court, appellant-Company prays for a complete reversal of the trial court's judgment, and that the appellee-Town be permanently enjoined from enforcement of its described ordinance, dated January 28, 1946; while, in turn, appellee-Town seeks an affirmance of that judgment in all respects, except in so far as it enjoins the appellee from enforcing such penal provisions of that ordinance.

The appeals together, thus involving the validity and the enforceability of the Town's ordinance so terminating the operations of the Company therein, at once bring under review these two comparatively recent decisions of our Supreme Court: Fleming v. Houston Lighting & Power Co., 135 Tex. 463, 138 S.W.2d 520, 143 S.W.2d 923; Id., Tex.Civ.App., 128 S.W.2d 487, and State ex rel. City of Jasper v. Gulf States Utilities Co., Tex.Civ.App., 189 S.W. 2d 693.

Appellant, grounding its position, in the main, upon Revised Civil Statutes of Texas, Articles 1435 and 1436, contends it had acquired and perfected—by grant direct from the State—a vested right and franchise in, over, and along the appellee's streets for the maintenance of its electric light and power service therein, prior to the incorporation of the Town, which, as a matter of both fact and law, before as well as after its incorporation, was shown to have consented to such use thereof by it; it relies primarily upon this court's construction of that statute in the Fleming case supra, as reported in 128 S.W.2d 487.

Whereas, the appellee plants its opposing position squarely upon the Supreme Court's disposition of the City of Jasper case, as so reported in 189 S.W.2d at page 693 et seq. Indeed, the Town urges that this cause is but a resurgence of, or at least a counterpart to, the Jasper case—indistinguishable from it upon either the facts or the law.

It is, therefore, deemed expedient that the issues thus joined here be first considered in so far as they are deemed referable to or controlled by the holdings of the Supreme Court in the two causes thus brought under consideration by the parties.

After careful comparison of the Supreme Court's opinions in those two cases, it is this court's conclusion that neither of them was decided upon the legal equivalent of the facts here obtaining—indeed, that this cause in its ultimate reaches is distinguishable from them both, in that it is sui generis and in a class by itself, upon the controlling facts that do not bring it within the rules of law applied by the Supreme Court in either one of those somewhat similar situations.

As concern the Fleming case, there was but a single issue of law involved, and that upon undisputed facts, which simply was whether or not the ordinance of the City of West University Place, levying a 4% street-rental charge out of its gross receipts from sales made in the town against the Lighting & Power Company for its use of the city's streets, was valid, in the circumstances under which it was imposed; this court had held the ordinance invalid, upon the ground that the levy so exacting street-rental impaired the pre-existing franchise and contract rights that had inured to the Utilities Company under R.S. Articles 1435 and 1436, and the City's acceptance and consent thereto by the latter's officially granted contracts, and many other acts.

The Supreme Court, however, reversed that judgment, holding, in plain effect, that the consent-franchise, under which the Utilities Company was operating with the City, could coexist along with the new ordinance validly levying the rental charge; and it decided nothing else. The court was careful to restrict its holding to that one, which

is made plain both in its original opinion, as reported in 138 S.W.2d 520, and in its subsequent overruling of the motion for rehearing, reported in 143 S.W.2d 923, 924.

Wherefore, since the validity of the street-rental ordinance was thus all that was involved in either court, the reversal of this court's judgment perforce took from it all authority of law as affected such street-rental ordinance; but the Supreme Court did not—either expressly or by necessary implication—overrule this court's construction of R.S. Articles 1435 and 1436, upon which, in part, it had arrived at its own determination in that cause.

In other words, this court had construed these articles, and particularly 1436, in this declaration:

"The appellant's right to the use and occupancy of these streets for that purpose was predicated upon a general statute of the State applying uniformly to all corporations rendering gas or electric service, which declared its general and state-wide policy with reference to such use and occupancy of streets in such cities and towns so created, to-wit: R. S. Article 1436; the right given thereby is plainly and directly granted by the State, and became complete on the giving of the City's consent thereto, which, as indicated supra, occurred in this instance, that being the sole statutory condition-precedent to the investment of the utility with the granted right; Galveston & W. Ry. Co. v. City of Galveston, 90 Tex. 398, 39 S.W. 96, 36 L.R.A. 33; Denison & S. R. Co. v. St. Louis S. W. Ry. Co., 96 Tex. 233, 72 S.W. 161, 201; Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912, Ann.Cas. 1914C, 1282; Fort Worth Gas Co. v. Latex Oil & Gas Co., Tex.Civ.App., 299 S.W. 705, writ refused 118 Tex. 674."

The Supreme Court, however, in neither of its opinions in the same case held differently in that respect, but it proceeded, in careful discrimination, to point out that still our courts quite generally, including many of those cited in support of its own opinion by this court, had in effect held that such a street-rental was not inhibited by those statutory provisions; it went so far in its original opinion as to modify the authority of one of the cases this court had so cited,

that is, Fort Worth Gas Co. v. Latex Oil & Gas Co., Tex.Civ.App., 299 S.W. 705, holding that its former order in that case of "writ refused" should have been "writ dismissed"; in its opinion on rehearing, 143 S.W.2d at page 924, it again made clear that it had sustained the City's ordinance because it had imposed only a street "rental charge", and not a "Tax or charge for the privilege of doing business"; still further, in Payne v. Massey, Tex.Sup., 196 S.W.2d 493, at page 495, top column 1, it also noted the fact that it had, in the Fleming case, "Held that a municipality might lawfully impose a gross receipts tax against a public utility company as a charge for the use of the streets. In that case there was a permanent occupation and appropriation of certain portions of the streets to the exclusion of the general public." Likewise, as indicated, no such issue as dominated appellant's case in this instance, both under its pleading declaring thereon and its presented proof in support thereof—that is, of its own acceptance of a franchise to carry on its business in the Town of Hempstead vouchsafed it by the State, through Article 1436, and acquiesced in and consented to by that town both before and subsequent to its incorporation—was raised by the parties, or determined by the Supreme Court in the Jasper case.

These are measured statements, but they are thought to correctly reflect the actual record the Supreme Court's opinion in that cause evidences; it therein held that the electric franchises granted by the county commissioners' court there involved were invalid and of no effect, for lack of power in the grantors thereof, but it did not consider the franchise-acceptance and consent-to-the-exercise-of the rights arising out of Article 1436, here involved; because, only rights arising out of the county commissioners' court franchises were ever raised by the pleadings, or considered or decided by the courts, trial or appellate, in that controversy. In short, it seems clear that the issues here so based upon and growing out of Article 1436, its acceptance by this appellant, and consent thereto by this appellee, neither were nor properly could have been decided in the Jasper case. To state it another way, the rights and privileges, and

all of them, in issue between the parties in that cause were thus solely those granted by the county commissioners' court to the appellant's predecessors in that controversy, which the Supreme Court said "Can be accorded no other status, under the undisputed facts." [189 S.W.2d 696.]

It is true that the court thereafter held that the company therein (that is, the appellant here, who was also the appellant in that case) had been charged, when it bought the rights of its predecessors under those county commissioners' court franchises, with knowledge of the provisions of R.S. Articles 1016 and 1436, relating to the powers and rights of such incorporated towns; but that record further shows, in addition to this fact that no issue had so been raised under the pleadings and proof of any claims or rights being asserted by the appellant there under Article 1436, that appellant had bought those franchises from its predecessors, hence had come into that utility-field, for the first time after the City of Jasper had become an incorporated town; so that, for the Supreme Court in those circumstances to hold that that litigant, the appellant there as well as here, had been so charged in so buying into an incorporated town's utility-business from predecessors, who had gotten their rights solely from the commissioners' court of the county, prior to such incorporation, is readily understood. That is a far cry from holding that no right inured to a utility company in the very different position of this appellant, from and under such Article 1436, in the undisputed circumstances here existing.

■ Reverting, therefore, to the conclusion already stated, under the view that the Supreme Court's adjudications in neither the Fleming nor the Jasper cases contravene the quoted construction by this court of that article in the Fleming case, this court is constrained to here reiterate it, not only as being sound, but as requiring a reversal of the trial court's judgment in this cause.

■ While the field is vast and these records are long, it is not deemed amiss to specifically add the further holding that the appellee-Town, as so claimed by appellant, was shown to have accepted, acquiesced in, and consented to the exercise of the rights herein claimed by appellant, pursuant to Article 1436, in the town's streets and other ways, both before and after its incorporation; in other words, that appellant especially had the consent of the town's governing body after its incorporation, which resulted as a matter of law from the developed facts, and which should have been so declared by the trial court.

This partial resume of some of such facts, considered to be correct, is in substance taken from appellant's original brief:

The trial court found as a fact:

(1) "The governing body of the Incorporated Town of Hempstead, Texas, has acquiesced in the erection and maintenance by the Gulf States Utilities Company of its poles, lines and other properties, in, along, over and across the streets and alleys of the Incorporated Town of Hempstead; and poles, lines and other properties have been erected or maintained in said streets and alleys of said Town, under the direction of the governing body thereof, since the ordinance of date of February 28, 1944, and under such ordinance.

(2) "That from the time of incorporation of the town on June 10, 1935, until the passage of an ordinance on January 28, 1946, the Gulf States Utilities Company had openly maintained and extended its lines in the streets, with the knowledge of the governing body of the town without notice of objection.

(3) "That from about August 1, 1939, to August 1 1943, the town purchased electric power from the Company delivered within the town through lines erected over, across and along its public streets and alleys.

(4) "That on July 28, 1941, the governing body of the town passed an ordinance, which required the Company to pay a street rental tax for the use of the public ways for its poles and lines, and, although such ordinance specifically provided that it did not 'grant a franchise', it did require the payment of rental for the use of the streets, and the Company paid street rental in the years 1942, 1943, 1944, and 1945.

(5) "That on March 25, 1940, the governing body of the town enacted an ordinance providing for the regulation of elec-

tric power rates and requiring a schedule of rates to be filed with the governing body of the town; that the Company, in compliance with such ordinance, filed a schedule of rates.

(6) "That on June 28, 1941, the governing body of the town adopted a rate ordinance and the Mayor of the town addressed a letter to the Company, requesting the Company to abide by the rates set forth in the ordinance, and that, pursuant to such request, the Company did abide by the rates adopted.

(7) "That on the 28th day of February, 1944, the governing body of the town enacted an ordinance requiring the company, before making any improvement, alteration or addition to its properties, to make a formal application to the town clerk, setting out the nature of the proposed work and its location; that, pursuant to this ordinance, the Company made numerous formal applications to the town clerk, some of which recited that they were for extensions of lines and erection of poles in and along the streets of the town; that, pursuant to such applications, formal permits in the wording set forth, declared 'permission is hereby granted' for improvements 'as set out in the application'; that the ordinance provided for appeal to the Board of Commissioners of the town, in the event of refusal of a permit by the town clerk.

(8) "That the Company paid and the town received and accepted ad valorem taxes on the property of the Company located in the town in and for every year between 1937 and 1946, inclusive.

(9) "That the town contracted for and received from the Company electric power for the propulsion of pumps of the town's water system, as late as October, 1945.

(10) "That on July 11, 1939, the town, acting through its Mayor, pursuant to authority granted by ordinance of the governing body, entered into a written contract with the Company to furnish the town electric energy for water-pumping for a period of five years, which written contract desig-nated the town as 'Customer', and one provision of which written contract was, 'the Customer agrees to furnish a right of way over land, which is owned or controlled by the Customer, free of cost, and to aid in every way in securing other necessary right of ways.'" These authorities are cited as upholding those conclusions: San Antonio Traction Co. v. Altgelt, 200 U.S. 304, 26 S. Ct. 261, 50 L.Ed. 491; Kansas City M. & O. R. Co. v. City of Sweetwater, 104 Tex. 329, 137 S.W. 1117; Athens Tel. Co. v. City of Athens, Tex.Civ.App., 182 S.W. 42; City of Terrell v. Terrell Electric Light Co., Tex.Civ.App., 187 S.W. 966; State v. Missouri Standard Tel. Co., 337 Mo. 642, 85 S.W.2d 613; Eastern Shore Pub. Serv. Co. v. Town of Seaford, 23 Del.Ch. 199, 2 A.2d 265; Chicago City Ry. Co. v. People, 73 Ill. 541; City of Detroit v. Detriot City Ry. Co., C.C., 56 F. 867; City of Owensboro v. Cumberland Tel. & Tel. Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389; City of Baird v. West Texas Utilities Co., Tex.Civ.App., 174 S.W.2d 649; West Texas Utilities Co. v. City, 5 Cir., 38 F.2d 466; Chicago R. I. & P. R. Co. v. Joliet, 79 Ill. 25; City of Bradford v. New York & P. Tel. Co., 206 Pa. 582, 56 A. 41; Mayor and Council of Crisfield v. Public Service Comm., 183 Md. 179, 36 A.2d 705; Missouri River Tel. Co. v. City of Mitchell, 22 S.D. 191, 116 N.W. 67, 70; Article X, Section 7, Constitution of Texas, Vernon's Ann.St.; Article X, Section 3, Constitution of S. Dakota; 15 C.J.S., Consent, pp. 979, 980; McQuillin's Municipal Corporations, 2nd Ed., Vol. 4, p. 884.

These conclusions require a reversal of the trial court's judgment, a refusal of the appellee's cross-appeal, and a rendition here that the appellee-Town be permanently enjoined from the enforcement of its ordinance of January 28, 1946, and from any interference with the exercise by the appellant of the rights herein held to have been vested in it over the streets and public ways of the town.

Reversed and rendered.