NORTHERN IOWA GAS & ELECTRIC CO. v. INCORPORATED TOWN OF LUVERNE, IOWA.

(District Court, N. D. Iowa, C. D. May 26, 1919.)

No. 28.

CONTRACTS ⚖=10(4)—MUTUALITY OF OBLIGATION—CONTRACT TO FURNISH ELECTRIC CURRENT.

A contract by which an electric company agreed for a term of 20 years to furnish to a town, through a transmission line to be built by the town and connected with the company's line, "all the electricity and current that shall be desired by the town or by its patrons along its transmission line," to be paid for by meter measurement, but by which the town assumed no obligation to purchase any definite quantity of electricity, *held* void for lack of mutuality.

In Equity. Suit by the Northern Iowa Gas & Electric Company against the Incorporated Town of Luverne, Iowa. On motion for preliminary injunction. Granted.

Price & Burnquist, of Ft. Dodge, Iowa, for plaintiff.

Grimm, Wheeler, Elliott & Jay, of Cedar Rapids, Iowa, for defendant.

REED, District Judge. The plaintiff, Northern Iowa Gas & Electric Company, a corporation of West Virginia, engaged in the manufacture, sale, transmission, and distribution of electric current in the town of Humboldt, in this state and district, for light, heat, and power, and other lawful purposes, both at wholesale and retail, brings this suit to enjoin and temporarily and permanently restrain the defendant town of Luverne, a municipal corporation of Iowa, situated in Kossuth county, that state, from connecting its line and equipment for the transmission and distribution of electric current from plaintiff's plant in Humboldt to said town of Luverne, for light, heat, and power purposes.

The petition alleges that on September 3, 1915, the plaintiff and defendant entered into a written contract, whereby the defendant claims that plaintiff agreed to furnish during a period of 20 years from and after the 1st day of October, 1915, all electric current and power that the defendant shall desire for lighting and power purposes by the town or by its patrons along its transmission line for lighting, heating, and power purposes, and at the close of said 20-year period the defendant may at its option renew the contract for another 20 years, which said contract, so far as deemed material, is as follows:

"The company agrees to furnish the town during a period of 20 years from and after the 1st day of October, 1915, all electricity and current that shall be desired by the town or by its patrons along its transmission line (whether within or without the town as hereinafter described) for lighting purposes or for power purposes or for other lawful use. At the close of said 20-year period, the town may at its own option renew this contract for another like period of 20 years.

"The company, its successors or assigns, represents that it can and will furnish such current and electricity for twenty hours during each day of

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the whole said period of service, that its service will be of first-class quality and ample in amount to answer the needs of the town and its said patrons; that the company will at all times keep abreast with the best approved practices and customs of the hour; and that it will so provide, regulate, and supply said service as to make it a first-class A No. 1 merchantable service in every respect—it being understood that it is the intention of the town to distribute and supply such electricity to all patrons who may be induced to take it and who are within a reasonable distance of the town or transmission line belonging to the town as hereinafter spoken of; the intention further being that the town may install a transformer along said transmission line at such place or places as the town may desire, from which it may run its secondary and supply lines to patrons. * * *

"The town agrees to pay the company, their successors or assigns, at Humboldt, Iowa, for the electricity so furnished 3½ cents per kilowatt hour. This money shall be paid in monthly installments on the 10th of the month following the furnishing of the electricity by the company. The amount of electricity so furnished shall be recorded by a meter installed by the town on the low tension side of each high tension reformer which may be installed on the line. Such meter shall be made and kept as accurate as possible, and either party may have the right at any time to test said meter in the presence of a representative of the other party, and should such test disclose the fact that the meter is not accurate for practical use, it may be repaired, calibrated, and made accurate at the expense of the party who desires this to be done.

"Such electricity shall be known as alternating 60-cycle current, and it shall be conveyed from the power house of the company in Humboldt, Iowa, to the distributing station of the town of Luverne, Iowa, by the transmission conductors. The company, their successors or assigns, will build and maintain such transmission line from its power house to some convenient point on the north line of the incorporated town of Humboldt, Iowa, where the connection shall be made with the line owned by the town of Livermore; the town shall build and maintain such transmission line from connecting point in the town of Livermore, Iowa. Such transmission line from the connecting point in the town of Livermore, Iowa, and the right of way thereon, with all rights therein (except herein expressly provided) shall be deemed to belong to the town.

"In order that the town may have sufficient territory within which to secure patrons, it is further agreed that the company, its successors or assigns, will not furnish electrical power or service of any kind to any person or place within five miles of any transformer or distributing station which the town may desire to install along said transmission line at any time. The transmission line, together with all meters, transformers, apparatus, machinery, and material used or installed by either party, shall be of substantial, first-class quality.

"It is further understood that the town is about to expend approximately $11,000 in order to secure electric lights and power for its use and for the use of its citizens and patrons, and that it does and must rely upon the company, their successors and assigns, under the terms of this contract, to provide such electricity: and the company therefore agrees that it will furnish the town a good and sufficient bond in the sum of $5,000, upon which the company and a solvent surety company shall at all times be liable, conditioned for the faithful performance of this contract, and for the payment of any damages, stipulated or otherwise, which the town may suffer by reason of a breach in whole or in part of any of the conditions of this agreement, the said sureties to be approved by the town. It is understood that such bond shall be for one year at a time, but it is specifically agreed that it shall be renewed each year 30 days before the expiration of the bond for the preceding year, so that the town may know at least 30 days in advance, that it shall be protected by sufficient sureties." Signed by the respective parties.

It is alleged by the plaintiff that, in addition to the wholesale contract by it with the town of Luverne and some nine other towns, sit-

uated in the Northern district of Iowa, that it is also engaged as a public utility corporation in furnishing electric light and power to certain other municipalities in northern Iowa in which it holds franchises and carries on the entire business of distributing, selling, and furnishing electricity at retail; that it operates such franchises in the towns of Humboldt, Thor, Rutland, Eagle Grove, Clarion, and Goldfield; that the current and power generated for sale in such municipalities, as well as the power generated for sale at wholesale to the defendant town and nine other towns, known and designated as "high line towns," is generated at the central water power plant at Humboldt, Iowa, augmented by the steam plant at Eagle Grove, Iowa, both operated as a single generating unit; that at the time of the execution of the said contract with the defendant the rates specified therein were, through mistake and error, made too low, and that by reason thereof the plaintiff company has been compelled during the existence of the said contract to furnish, and has furnished, electricity to the said town at a rate which was too low to render a fair and adequate return to it for the service rendered, and that such was the case prior to the abnormal conditions brought about as a result of our recent war with the German Empire; that by reason of the abnormal conditions brought about by the war the said rate, which never was compensatory, has become confiscatory, and is wholly inadequate, and compels this plaintiff to furnish service to the said defendant for less than the cost of producing the same.

It is further alleged that plaintiff and defendant entered into an agreement in the month of December, 1918, by the terms of which it was agreed between the plaintiff and defendant, represented by one Dillon and certain attorneys for the town, that the rates specified in said contract should be increased to five cents per kilowatt hour for six months, and during such time thereafter as the abnormal conditions brought about by the war made such rate necessary; that plaintiff relied upon the agreement so made and believed the promise then made that the increase in rates would be paid, but that the defendant town has repudiated said agreement, and has at all times refused to abide by the terms thereof or to pay such increased rate; that thereafter the plaintiff disconnected the lines of said town of Luverne from its high-tension wire and notified said town that it would no longer continue to furnish service to it under the terms specified in said original contract, nor would it longer be bound by the terms of said contract, for the reason that the said contract was void for lack of mutuality; but that on each occasion, after having been disconnected from the said high-tension line, the defendant town has, without the knowledge, authority, or consent of this plaintiff, connected its distributing system with the said line of the plaintiff, and has continued to take current therefrom without the consent and over the objection of this plaintiff; and on or about the 19th day of February, 1919, the plaintiff caused a written notice to be mailed to the mayor and city council of said town, again notifying them of its purpose to discontinue furnishing electricity to the said town under said contract by reason of its being void; that the defendant town, notwithstanding

such notice and all of the acts and things done by plaintiff in its endeavor to terminate service to said town, is continuing to take from the lines of this plaintiff current for its use and the use of the citizens and residents of said town, and unless restrained will continue to take said current from this plaintiff's lines without making just and reasonable compensation therefor; that plaintiff has no plain, speedy, or adequate remedy at law.

The plaintiff therefore asks that defendant be restrained and enjoined from in any wise connecting its lines with the line and system of the plaintiff for transmitting the electric current so produced by the plaintiff, and for general equitable relief. A time was thereupon set for the hearing of the application for a temporary injunction, of which due notice was given, and the parties have taken and submitted preliminary proofs, which are on file with the clerk.

The main contention of the plaintiff upon the hearing is (1) that the contract of September 3, 1915, is void for want of mutuality, and (2) that because of the alleged error in said contract as originally made, and the abnormal conditions caused by the war, the plaintiff is no longer bound by said contract; while the defendant contends that the contract is based upon a sufficient consideration, and therefore binding upon each of the parties and valid, denies the alleged agreement to increase the contract rate to five cents per kilowatt hour, and other allegations of the bill, and asks that the bill be dismissed.

The rule for determining when a contract of this class is mutually binding upon each of the parties thereto was considered and determined by the Circuit Court of Appeals for this circuit in Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696. In this case it is said:

"The rules applicable to contracts of this class may be thus briefly stated: A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty. An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer [citing the cases]. But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned [citing the cases]. Accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase, or the other refuses to sell or deliver, under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder. * * *"

This case is followed by the Circuit Court of Appeals in A. Santealla & Co. v. Lange Co., 155 Fed. 719, 84 C. C. A. 145. And see Drake v. Vorse, 52 Iowa, 417, 3 N. W. 465; Jordan v. Indianapolis

Water Co. (Ind. App.) 61 N. E. 12;[1] Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. Rep. 344, citing, among other cases, Cold Blast Transportation Co. v. Kansas City.Bolt & Nut Co., 114 Fed. 77; 52 C. C. A. 25, 57 L. R. A. 696.

The case of Conley Camera Co. v. Multiscope & Film Co., 216 Fed. 892, 133 C. C. A. 96, cited by defendant, in no wise conflicts with any of these citations. That case fully recognizes the rule held in Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., above, and its citations, but distinguishes it from those upon the ground that the defendant Conley Camera Company (plaintiff in error) had purchased from the plaintiff Multiscope & Film Company (defendant in error) for the consideration of $500 and an order for some $9,000 worth of photographic woodenware and certain patents and rights to patents of the United States for improvements in panoramic cameras, and certain cameras manufactured under said patents, and certain tools, dies, and other goods and merchandise described in the agreement, and further agreed to sell to the plaintiff cameras manufactured by the defendant under said letters patent known as the "Al-Vista" panoramic film cameras, at the same price which the plaintiff was then paying to the defendant for such cameras, subject, however, to a pro rata advance in case of an advance in cost of materials or labor over present prices, irrespective of quantities. The plaintiff alleged the full performance in all respects of the contract on its part, and that defendant failed to furnish only a small portion of the cameras it had agreed to sell to the plaintiff, and finally refused to ship any more cameras to the plaintiff, though frequently requested to do so, alleged breaches of the contract on the part of the defendant to the plaintiff's damage, for which it asked and recovered judgment, from which the defendant Conley Camera Company prosecuted a writ of error. Among the defenses alleged by the defendant was that the contract was void for lack of mutuality. Of this defense the Circuit Court of Appeals said:

"In this case the plaintiff was necessarily compelled to buy all the 'Al-Vista' cameras it needed to supply its customers from the defendant, as it alone, as the assignee and owner of all the patents under which they could be made, could manufacture them. Therefore, by necessary implication, the contract compelled the plaintiff to purchase from the defendant all these cameras which it required as long as the patents were alive. This is sufficient [citing Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co. and other cases]"—thus clearly distinguishing the case from Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.

As the defendant under the contract in question never assumed any obligation on its part, nor agreed to purchase any definite amount of electricity for lighting or other purposes, the contract between the plaintiff and the defendant is lacking in mutuality, and therefore void. Whether or not the alleged mistake in the contract fixing the rate at which the plaintiff was to furnish electric current to the defendant, or the increased cost of the current, because of the abnormal conditions arising out of the war, relieves the plaintiff from the contract,.

[1] See 159 Ind. 337, 64 N. E. 680.

we need not consider, for, the contract being void, a breach thereof imposes no obligation upon either party. But see Railway Co. v. Hoyt, 149 U. S. 2, 14, 13 Sup. Ct. 779, 37 L. Ed. 625.

Under the pleadings and preliminary proofs a temporary injunction will be granted as prayed by the plaintiff, upon the execution by it of a bond in the penal sum of $2,500, with sureties to be approved by the clerk, conditioned that it will indemnify the defendant against all damages that it may sustain because of the issuance of the temporary injunction. The defendant may answer or otherwise plead to the petition, if it shall be so advised, within 30 days from the filing of this order, and the cause will then stand for further or final hearing. The defendant excepts to the order granting the temporary injunction.

It is ordered accordingly.

