## CITY AND COUNTY OF DENVER v. STENGER.

(Circuit Court of Appeals, Eighth Circuit. December 29, 1921. Rehearing Denied March 16, 1922.)

No. 5849.

1. **Carriers ⬳12(9)—Ordinances fixing street railroad rates held not contracts between city and street railroad.**

Ordinances which were not contractual in form or in substance, and which declared in their preambles that the ordinances were for the purpose of "regulating and fixing the charges to be collected by" a street railroad, and which merely specified the rates to be charged by the railroad, *held* not contracts between the city and the street railroad, and did not preclude railroad from increasing rates, where rates so fixed were confiscatory.

2. **Carriers ⬳12(9)—Ordinance fixing rates as condition to railroad's right to use streets held not to preclude increase in rates where confiscatory.**

Ordinances fixing rate of fare to be charged by street railroad as a condition to the right given railroad to use streets, *held* not to bind railroad to charge such rates, even though confiscatory, since the city, in view of Const. Colo. art. 2, § 11, could not make a contract definitely suspending its power to regulate street car fares, and since the contract, if binding on railroad, and not on city, would be void for want of mutuality.

3. **Carriers ⬳12(9)—Contracts suspending city's power to regulate street car fares prohibited by Constitution.**

Const. Colo. art. 2 § 11, against grant of irrevocable privileges, franchises, and immunities, and section 8 of article 15, against abridging the power of eminent domain or construction thereof, so as to prevent the taking of the property and franchises of incorporated companies, etc., prohibit a contract suspending the power of a city to regulate street railroad fares.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by E. Stenger, as receiver of the Denver Tramway Company, against the City and County of Denver. From an order granting a temporary injunction, and denying defendant's motion to dismiss the petition, defendant appeals. Affirmed.

J. A. Marsh, of Denver, Colo. (Norton Montgomery, Ernest Morris, and Harvey Riddell, all of Denver, Colo., on the brief), for appellant.

Gerald Hughes, of Denver, Colo. (Clayton C. Dorsey, of Denver, Colo., on the brief), for appellee.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

CARLAND, Circuit Judge. This is an appeal from an order granting a temporary injunction and denying appellant's motion to dismiss the petition of appellee. The injunction was granted on said petition, the intervening petition and answer of appellant, and affidavits and exhibits submitted by both sides. The order, so far as material, was in the following words:

(1) "That the city and county of Denver, its officers, agents. attorneys, and representatives, and all those acting for or on its behalf or in pursuance of

its authority and direction, and each and every thereof, be enjoined and restrained from enforcing or attempting to enforce a maximum fare of six (6) cents for adults and three (3) cents for children, or any lesser fares or amounts under any existing ordinances or franchises, or the fare provisions therein contained, set forth in the petition of E. Stenger, receiver, or the petition in intervention and answer of city and county of Denver."

(2) "That the city and county of Denver, its officers, agents, attorneys, and representatives, and all those acting for or on its behalf or in pursuance of its authority and direction, and each and every thereof, except those acting pursuant to the police power in regulating fares and charges through the city council of said city, be enjoined and restrained from interfering with or attempting to interfere with the collection by E. Stenger, receiver, of such fares for the carriage of persons on the street railway system of the Denver Tramway Company as may be fixed and established by him within the limitations and conditions placed upon him by this decree:  Provided, however, and this injunction is conditioned thereon, that E. Stenger, receiver, shall not charge for the carriage of passengers on the street railway system of the Denver Tramway Company to exceed eight (8) cents for adults and four (4) cents for children between the ages of six (6) and twelve (12) years, with free passage to children under six (6) years, and with free transfers to passengers under the conditions, rules and regulations now prevailing, and for two (2) tickets or tokens for adults fifteen (15) cents, or at the rate of seven and one-half (7½) cents for an adult fare if such tickets or tokens are purchased, and likewise four (4) tickets or tokens for fares for children between the ages of six (6) and twelve (12) years at fifteen (15) cents, or at the rate of three and three-fourths (3¾) cents for such tickets or tokens for children when such tickets or tokens are so purchased; and further conditioned that, before any such increases in fares shall be put into effect, said E. Stenger, receiver, shall give public notice thereof by publication in two or more daily newspapers published in the city and county of Denver, and by posting a notice in each of the street cars, showing definitely the amount of fares to be charged and the date when said increase shall become effective, not less than forty-eight (48) hours prior to the time when such collection of fares shall become effective.  *  *  *"

(5) "This order and the enforcement thereof shall in no manner or degree whatsoever be a limitation or restriction on the legislative power of the city and county of Denver to regulate the fares to be charged for the carriage of passengers on the street railway system of the city and county of Denver, which said power is a continuing one in said city and county of Denver, but is based upon the confiscatory character of the present fares hereinabove enjoined and the failure and refusal of the city and county of Denver to further and legally and constitutionally exercise the power of regulating fares, and is without prejudice to the right of E. Stenger, receiver, to question or litigate the legality and constitutionality of any such subsequent exercise of such regulating power of said city."

As appellant answered the petition, no separate discussion is necessary in regard to the motion to dismiss, as the questions raised on the appeal are the same.  Appellee was appointed in a creditors' suit pending in the court below wherein the Westinghouse Electric & Manufacturing Company was plaintiff and the Denver Tramway Company was defendant.  The petition of appellee set forth facts which, if proven, showed the passenger fares which the appellant was seeking to enforce did not permit a reasonable and fair return for the use by the public of the property of the Tramway Company.  The evidence of the petitioner in regard to confiscation was not seriously disputed, and no point is made here that the evidence does not show the rates challenged to be confiscatory in fact, although counsel does not formally admit that they are.  If this appeal simply presented a question of whether the

evidence showed the fares challenged to be confiscatory, the case would end here by the affirmance of the order without further discussion.

Counsel for appellant, however, raise a very important legal question. They claim that the acceptance of the ordinances and franchises hereinafter referred to by the Tramway Company and its predecessors constituted a valid and binding contract or contracts in relation to the fares to be charged by the Tramway Company, and therefore the court below had no power or jurisdiction to enjoin them as confiscatory. The strongest form in which counsel state their position in regard to these alleged contracts is substantially as follows: The acceptance of the ordinances and franchises under which the Tramway Company and its predecessors operate a street railway in the city and county of Denver constituted contracts binding upon both parties, and that though such contracts as to rates to be charged by the Tramway Company are not beyond legislative control, yet there was power to make them in the first instance and that they are valid and binding as contracts until the city and county of Denver thinks proper to change the rate.

The appellee contends that these ordinances and franchises never were at any time valid contracts binding both parties thereto as to the rates to be charged by the Tramway Company either in substance or form, and if they shall be held to be contracts, there existed no power in the city of Denver or in the city and county of Denver to make such contracts. The ordinances and franchises having to do with the fares to be charged by the Tramway Company and its predecessors are as follows:

(1) By Ordinance No. 3, 1885, the city of Denver granted to the Denver Electric & Cable Railway Company a right of way in, along, and across the streets of said city for a single or double track railway. Section 6 of this ordinance provided:

"The said company shall not be entitled to receive more than five cents for a single passage on any line of the said company's railway within this city."

(2) By Ordinance No. 36, 1888, the city of Denver granted to the Denver City Cable Railway Company a right of way upon and across the streets, avenues, viaducts, and bridges of said city to build, equip, maintain, and operate a system of cable street railway lines. Section 5 of this ordinance provided:

"That the said the Denver City Cable Company, its successors and assigns, shall not be entitled to receive more than five cents for a single passage upon any one of the lines of said company within the city of Denver."

(3) On May 15, 1906, a franchise was granted to the Denver City Tramway Company by the qualified taxpaying electors of the city and county of Denver. This franchise granted a right of way to locate, build, construct, operate, and maintain a single or double track railway upon, along, and across the streets, avenues, viaducts, and bridges of the city and county of Denver which were specifically named in the franchise. Section 6 of this franchise reads as follows:

"Sec. 6. The Denver City Tramway Company, grantee, shall be entitled to receive five (5) cents, and no more, for a single passage on any line of the company's railway within the city and county of Denver: Provided, that children under six (6) years of age, when accompanied by a paying passenger, shall be carried free of charge; and children over six (6) years of age, and under twelve (12) years of age, at half fare, and the conductor in charge of each car shall at all times be provided with and have on sale half fare tickets to be sold in lots of not less than two (2) nor more than ten (10) at one time."

. (4) Ordinance No. 50, 1918, passed by. the council of the city and county of Denver had for its preamble the following:

"A bill·for an ordinance regulating and fixing the charges and fares to be collected by the Denver Tramway Company in the city and county of Denver, for services furnished by it in said city and county."

Section 1 of this ordinance was as follows:

"Sec. 1. That from and after the passage and approval of this ordinance the rates of charges permitted to be made and collected by the Denver Tramway Company for street car fare for transporting persons within the limits of the city and county of Denver during the period of the war, and until the date of the proclamation by the President of the United States of the exchange of ratification of treaties of peace, and until the President of the United States shall surrender to private management the railroads taken over under the act of Congress, passed the 21st day of March, 1918, and in no event to exceed one year and nine months next after the date of said proclamation by the President of the United States, shall be as follows: The Denver Tramway Company shall be entitled to receive six cents and no more for a single passage on any line of the company's railway within the city and county of Denver: Provided, that children under six years of age, when accompanied by a paying passenger, shall be carried free of charge, and children over six years of age and under twelve years of age at half fare, and the conductor in charge of each car shall at all times be provided with and have for sale tickets, both whole fare and half fare, to accommodate those wishing to purchase same."

(5) By an ordinance dated June 30, 1919, passed by the council of the city and county of Denver, Ordinance No. 50, 1918, was repealed. This repeal restored the five-cent fare provided by the franchise of May 15, 1906.

(6) Ordinance No. 87, 1919, was next passed by the council of the city and county of Denver, with the same preamble·as heretofore quoted, from Ordinance No. 50, 1918. Section 1 of this ordinance is as follows:

"Sec. 1. That from and after the time this ordinance becomes effective, the rates and charges permitted to be made and collected by the Denver Tramway Company for transporting persons within the limits of the city and county of Denver for the period of ninety (90) days from and after the time·this ordinance becomes effective, shall be as follows: The Denver Tramway Company shall be entitled to receive six cents and no more for a single passage on any line of the company's railway within the city and county of Denver: Provided, that children under six years of age, when accompanied by a paying passenger, shall 'be carried free of charge, and children over six years of age and under twelve years of age at half fare, and the conductor in charge of each car shall at all times be provided with and have for sale tickets, both whole fare and half fare, to accommodate those wishing to purchase same."

There having been an adverse vote by the electors of the city and county of Denver as to a proposed permanent plan solving the trans-

portation problems between the city and county of Denver and the Tramway Company, at the expiration of this ordinance, the five-cent fare was again put into effect.

(7) Ordinance No. 122, 1919, having the same preamble as heretofore quoted from No. 50, 1918, was passed by the council of the city and county of Denver. Section 1 of this ordinance provided:

"Sec. 1. That from and after the date this ordinance becomes effective, the Denver Tramway Company shall be entitled to receive six cents for a single passage on any line of the company's railway within the city and county of Denver: Provided that children under six years of age when accompanied by a paying passenger shall be carried free of charge and children over six years of age and under twelve years of age, at half fare, and, the conductor in charge of each car shall at all times be provided with and have for sale tickets both whole and half fare to accommodate those wishing to purchase the same."

These were the rates that were being charged by the Tramway Company at the time the injunction was issued. The difference in the names of the different political entities which granted the ordinances and franchises above referred to will be understood when it is stated that the city of Denver, pursuant to article 20 of the Constitution of Colorado, adopted in 1904 what is known as a home rule charter. By this action of the city, the people within the territory of the city and county of Denver were vested, in virtue of said article 20, with the power to legislate for themselves as to all rightful subjects of legislation, and were no longer subject to the legislative power of the state. Therefore, when the ordinances of 1885 and 1888 were passed, the city of Denver was acting under the authority of a charter granted by the legislative assembly of the state of Colorado, but when, in 1906, the franchise in regard to fares of May 15 was granted, the qualified taxpaying electors of the city and county of Denver ratified the franchise. Subsequently the power to pass such ordinances was vested in the counsel of the city and county of Denver. The Tramway Company is the successor of all the other companies mentioned in the different ordinances and franchises. It is the only street railway system in Denver, a city of nearly 200,000 people.

[1] We come, now, to the only important question raised upon the record, and that is as follows: Is there an existing contract between appellant and the Tramway Company, in virtue of which the Tramway Company is bound to carry passengers for the fares prescribed by the ordinances and franchises mentioned? Commencing with Ordinance No. 50, 1918, and ending with Ordinance No. 122, 1919, it must be conceded, we think, that they constituted nothing more than the exercise of the power to regulate the fares to be charged by the Tramway Company. The preambles of each of these ordinances, except the repealing ordinance of June 30, 1919, specifically declare that the ordinances were for the purpose of "regulating and fixing the charges to be collected by the Tramway Company." The council of the city and county of Denver possessed the power to do what it said it was doing, and its declared intention must be taken as true. These ordinances were not contractual in form nor in substance. Subject to constitutional limitations, the city and county of Denver had the power to

change the fares at any time. These ordinances to which reference is now being made granted the Tramway Company nothing. They were limitations upon the power of the Tramway Company to fix its own fares. So the Tramway Company accepted nothing that it was not compelled to accept, if the fares were not confiscatory. We are of the opinion, therefore, that they did not constitute contracts binding upon either party, so far as the question of fares was concerned.

[2] The ordinances of 1885, 1888, and 1906 granted a right of way to construct a street railway system in, along, and across the streets of the city of Denver and the city and county of Denver. The ordinance of 1906 was to terminate in 20 years, but it was specifically provided therein that it should in no way prejudice the rights of the Tramway Company in the ordinances of 1885 and 1888, which in terms had no limitation as to their existence. These ordinances provided a fare of five cents for a single passage on any line of the Tramway Company. They were not contractual in form, but they did grant rights of way as above stated, which were accepted by the Tramway Company. It is claimed by appellant that the five-cent fare was a condition of the grant, and its acceptance created a binding contract on the part of the Tramway Company. It can be seen that this might be so as to some conditions of the grant, but as to the fares appellant claims that the city of Denver and the city and county of Denver were bound only until they desired to change the fares. These ordinances were not contractual in form, and, adopting the construction placed upon the same by the appellant, we do not see how they could be called contracts binding upon both parties.

The appellant asserts that, while it cannot make a contract which shall suspend its power to regulate the fares to be charged by the Tramway Company, it could, by granting the ordinances of 1885, 1888, and 1906, bind the Tramway Company for as long or as short a time as appellant might desire not to change the fares. If however, the appellant can at any time change the fares—in other words, refuse to be bound by the contract—how does mere delay cure the lack of mutuality? A party to a contract is bound, or he is not bound, from the time of its execution. To say that a party is bound as long as he wants to be bound simply means that he is not bound at all. Upon the question of whether the parties to these ordinances intended to contract, and upon the question as to whether, if there was a contract, it would be void for want of mutuality, the following cases seem to us to be decisive against the claim of appellant. Home Telephone Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; Puget Sound Traction Co. v. Reynolds, 244 U. S. 574, 37 Sup. Ct. 705, 61 L. Ed. 1325, 5 A. L. R. 13; Rogers Park Water Co. v. Fergus, 180 U. S. 624, 21 Sup. Ct. 490, 45 L. Ed. 702; San Antonio Public Service Co. v. City of San Antonio (D. C.) 257 Fed. 467; City of San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 41 Sup. Ct. 428, 65 L. Ed. ——; Central Power Co. v. City of Kearney, 274 Fed. 253, Court of Appeals, 8th Circuit, opinion filed July 13, 1921; City of Dallas v. Dallas Telephone Co. (C. C. A.) 272 Fed. 410; Cleveland v. Cleveland Street Ry., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; Columbus

Ry. & Power Co. v. Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696; A. Santaella & Co. v. Otto F. Lange & Co., 155 Fed. 719, 84 C. C. A. 145: Woerheide v. Barber Asphalt Paving Co., 251 Fed. 196, 163 C. C. A. 352: Northern Iowa Gas & Elec. Co. v. Inc. Town of Luverne (D. C.) 257 Fed. 818; Id., 262 Fed. 711; Hutchinson Gas & Fuel Co. v. Wichita Natural Gas Co. (C. C. A.) 267 Fed. 35.

We do not deem it necessary to multiply authorities in support of the proposition that a unilateral contract is unenforceable for want of mutuality. We are also of the opinion that the city of Denver, or the city and county of Denver, never at any time possessed the power to enter into a contract with the Tramway Company whereby its power to regulate the fares of the company would be definitely suspended for any length of time. Article 2, § 11, of the Constitution of Colorado contains the following language:

"That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the General Assembly."

Article 1, § 17, of the Texas Constitution contains the following language:

"No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof."

Article 15, § 8, of the Colorado Constitution contains the following language:

"The right of eminent domain shall never be abridged, nor so construed as to prevent the general assembly from taking the property and franchises of incorporated companies and subjecting them to public use, the same as the property of individuals; and the police power of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the state."

Article 12, § 5, of the Missouri Constitution reads as follows:

"The exercise of the police power of the state shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the state."

Article 263 of the Louisiana Constitution reads as follows:

"The exercise of the police power of the state shall never be abridged nor so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the state."

Section 725, Iowa Code of 1897, reads as follows:

"*Regulation of Rates and Service.*—They shall have power to require every individual or private corporation operating such works or plant, subject to reasonable rules and regulations, to furnish any person applying therefor,

along the line of its pipes, mains, wires, or other conduits, with gas, water, light or power, and to supply said city or town with water for fire protection, and with gas, water, light or power for other necessary public purposes, and to regulate and fix the rent * * * or rates for water, gas, heat, and electric light or power, * * * and these powers shall not be abridged by ordinance, resolution, or contract."

[3] We are of the opinion that the quoted provisions of the Colorado Constitution, under the interpretations given similar provisions in the Constitutions of the states of Texas, Missouri, and Louisiana, the Code of Iowa, and statute of Nebraska, clearly prohibit the making of a contract suspending the power of the city and county of Denver or the city of Denver to regulate the fares of the Tramway Company. The history of the litigation in regard to the constitutional provisions of the state of Texas are to be found in San Antonio Traction Co. v. Altgelt, 200 U. S. 304, 26 Sup. Ct. 261, 50 L. Ed. 491; San Antonio v. San Antonio Public Service Co., supra; San Antonio Public Service Co. v. City of San Antonio, supra; City of Dallas v. Dallas Telephone Co., supra. The case of State ex rel. City of Sedalia v. Public Service Comm., 275 Mo. 201, 204 S. W. 497, construes the Missouri Constitution. Southern Electric Co. v. City of Chariton, 255 U. S. 539, 41 Sup. Ct. 400, 65 L. Ed. ——, construes the Iowa Code. Central Power Co. v. City of Kearney, supra, construes the statute of Nebraska. O'Keefe v. City of New Orleans (D. C.) 273 Fed. 560, construes the Louisiana Constitution.

The public policy of the state of Colorado as shown by her Constitution, statutes, charters, and decisions is opposed to the contracting away of the power of regulating and fixing rates of public utilities through the exercise of the police power. The claim that the legislative power of the city and county of Denver is not subject to the provisions of the Constitution of Colorado is not supported by reason or authority. The trial court having for just cause enjoined the rates shown to be confiscatory, and the council of the city and county of Denver refusing to make any other rates than those enjoined, it became necessary, in order to operate the Tramway Company, to make some provision in regard to rates. Of course, the court had no general power to regulate or make rates or fares for the Tramway Company, but it was its duty to make some order to prohibit the Tramway Company from charging what it pleased, and therefore to fix certain rates which the receiver should not exceed; these being only temporary for the purpose of the receivership.

We think the trial court acted in the premises clearly within the law and the facts, and the order granting the temporary injunction, and refusing to dismiss the appellee's petition, should be affirmed; and it is so ordered.