### CITY OF NEW ORLEANS et al. v. O'KEEFE et al.

(Circuit Court of Appeals, Fifth Circuit. April 1, 1922.)

#### No. 3735.

1. **Municipal corporations** ⬩⟞593—**Louisiana Constitution does not permit city to make binding contract fixing street car fares.**

   Const. La. 1921, art. 19, § 18, which forbids an abridgment of the police power of the state, as construed by the courts of that state, prohibits a city from making an irrevocable contract, which prevents it from thereafter regulating the rates of public utilities.

2. **Carriers** ⬩⟞12(9)—**Rate of fares not fixed by contract cannot be enforced as condition of exercising franchise after they became confiscatory.**

   Where a city had no authority to make an irrevocable contract fixing street car fares, it could not enforce, as a condition precedent to the right to continue to use its streets, an ordinance fixing such fares, after the fare so fixed had become confiscatory.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Henry D. Clayton, Judge.

Suit in equity by J. D. O'Keefe, as receiver of the New Orleans Railway & Light Company, and others, against the City of New Orleans and others. From a decree granting an injunction pendente lite to restrain interference with the receiver in charging an 8-cent street car fare (273 Fed. 560), defendants appeal. Affirmed.

---

⬩⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

W. Catesby Jones and Rene Viosca, Asst. City Attys., and Ivy G. Kittredge, City Atty., all of New Orleans, La., for appellants.

H. Generes Dufour, of New Orleans, La., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. This is an appeal from a decree of the District Court granting an injunction pendente lite restraining the city of New Orleans, and its officials named in said decree, from interfering with the receiver of the New Orleans Railway & Light Company in charging an eight-cent fare on said street railway system, until said order should be modified by said District Court, during the continuance of the suit pending in said District Court of the Empire Trust Company, as trustee, against said New Orleans Railway & Light Company, in which said receiver was appointed, upon the ground alleged in said bill for injunction that a lower rate of fare would deprive the complainant and said Railway Company of their property without due process of law.

The defendants did not offer any evidence contesting the allegations of the bill (which were supported by proof), but resisted the grant of the injunction upon the ground that the Railway & Light Company, and its subordinate companies, in securing their franchises had made irrevocable contracts with the city of New Orleans by which said rate was fixed at five cents, which rate could not be changed except by consent of the city, as one of the contracting parties, and that the five-cent rate was a condition to the grant of said franchises.

The court, in a very careful and full opinion rendered by Hon. Henry D. Clayton, the judge presiding, found the facts to be as claimed by the complainant receiver, and found that under the Constitution and laws of Louisiana the city of New Orleans and the Railway Company could not make an irrevocable contract fixing street car fares; that the city of New Orleans was empowered to regulate the rates of local public utilities in its borders, having all the powers of the state delegated to it for that purpose; and that where a rate prescribed, or continued, by the city in the exercise of such power deprived the utility of its property without due process of law, as he found would be then done by any rate for street car service of less than eight cents, the city could be enjoined from enforcing the same. O'Keefe, Receiver, v. City of New Orleans (D. C.) 273 Fed. 560. This opinion sufficiently sets forth the facts and authorities supporting this conclusion and renders unnecessary any general discussion thereof by this court.

[1] It was insisted in this court on behalf of the city of New Orleans that under the Constitution of Louisiana in force at the time of the grant to the several railway companies of the franchises to occupy the streets of the city, the city of New Orleans had the power to make irrevocable contracts with said railway companies as to a rate of fare to be charged, and that where such contracts were made they remained binding, even if the rate became confiscatory. Columbus Ry., Power & Light Co. v. City of Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648.

The powers of the city of New Orleans to regulate its public utilities have but recently been the subject of elaborate investigation by the Supreme Court of Louisiana, the results of which are given in an illuminating opinion in the case of State of Louisiana v. City of New Orleans (not yet [officially] reported) 91 South. 533, handed down on March 20, 1922. It is there held that the city of New Orleans possesses the full power of the state to regulate the local public utilities in its limits. It is further held that under the Constitution of Louisiana, which forbids an abridgment of the police power of the state, the Legislature cannot bargain away the authority to fix or contract rates for public utilities. This has been a provision of the Constitution of Louisiana since 1879. It is further held that a municipality, invested with authority to grant franchises and fix rates for local public utilities, cannot irrevocably surrender, or barter away, its police power in that respect, even for a limited term, unless, perhaps, the municipality is specifically authorized to make such irrevocable contract by the Legislature of a state whose Constitution allows it. Here, as we have seen, the Constitution forbids it.

It is therefore quite clear, from the foregoing opinion, that the Constitution of Louisiana would prohibit any attempt on the part of the Legislature, or the city of New Orleans as its delegated agency, to make an irrevocable contract, preventing it at any time from regulating the rates of a public utility. Such being the case, no contract existed with the Railway Company binding it to continue a confiscatory rate. As was said by the Supreme Court of the United States:

"The total want of power of the municipalities here in question to contract for rates, which is thus established, and the state public policy upon which the prohibition against the existence of such authority rests, absolutely exclude the existence of the right to enforce, as the result of the obligation of a contract, the concededly confiscatory rates which are involved, and therefore conclusively demonstrate the error committed below in enforcing such rates upon the theory of the existence of contract." Southern Iowa Elec. Co. v. Chariton, 255 U. S. 539, 546, 41 Sup. Ct. 400, 65 L. Ed. 764; City of San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 41 Sup. Ct. 428, 65 L. Ed. 777.

[2] The argument is also advanced that the maintenance of the rate of five cents was a condition to the grant, and continued use, of the franchises to occupy the streets. Having decided that there is no existing contract fixing the rate, we cannot so construe the ordinances granting these franchises and fixing such rates. In a recent case in which it was insisted, even if there was no contract binding both parties, that the maintenance of the rate originally named in the franchise ordinance would be obligatory on the Railway Company as a condition to the exercise of its franchise, in deciding against the claim, the Supreme Court of the United States, speaking by the late Chief Justice White, said:

"The duty of an owner of private property used for the public service to charge only a reasonable rate and thus respect the authority of government to regulate in the public interest, and of government to regulate it by fixing such a reasonable rate as will safeguard the rights of private ownership, are interdependent and reciprocal. * * *"

Therefore where the regulatory power was uncontrolled by contract it is held:

"It would follow that that power would be required to be exerted, and hence the supposed condition. operating upon the private owner, would be nugatory. Such a case really presents no question of a condition, since it resolves itself into a mere issue of the exercise by government of its regulatory power." San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 556, 41 Sup. Ct. 428, 65 L. Ed. 777.

The decree of the District Court is therefore affirmed.

BRYAN, Circuit Judge (concurring). I base my conclusion, that the decree of the court below should be affirmed, solely upon the effect of the decision of the Supreme Court of Louisiana, rendered March 20, 1922, in State v. City of New Orleans, 91 South. 533.