THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, etc., Plaintiff,* v. F. S. REDDING, *as Mayor, etc., et al., Defendants.*

No. 17,447.

### SYLLABUS BY THE COURT.

REFERENDUM—*City Ordinance Changing Rates—Public Utility Franchise.* When a grant is made, by a city of the second or third class, of a franchise to supply gas to the city and its inhabitants for a term of years, which prescribes the plan on which gas is to be distributed and the rates which consumers will pay therefor, it is competent for the mayor and council of such city thereafter to make reasonable changes in the rates from time to time, and section 749 of the General Statutes of 1909 does not require that an ordinance making such changes shall be submitted to the electors for their approval or rejection.

Original proceeding in mandamus. Opinion filed April 8, 1911. Peremptory writ denied.

*E. D. Mikesell, T. J. Hudson,* and *D. J. Sheedy,* for the plaintiff.

*J. B. Wilson, J. T. Cooper,* and *John J. Jones,* for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: The question involved in this controversy is whether the electors of the city of Fredonia are entitled to a referendum of an ordinance passed by the mayor and council of the city and amending and modifying a gas franchise previously granted. On September 20, 1901, the mayor and council passed an ordinance giving L. S. Skelton and B. E. LaDow the right to construct, maintain and operate a gas plant in the city for a period of twenty-one years. The ordinance provided that the consumers should have the option to take gas either at meter or flat rates, and a schedule was set out therein fixing the rates applicable

under each plan.  It also provided that the city should enact ordinances, rules and regulations that would secure the grantees all the rights, privileges and benefits granted by the ordinance.  Some time after the franchise was granted the rights of the grantees were assigned and transferred to the Fredonia Gas Company, and the plant was constructed and operated without change until the latter part of the year 1910, when the company complained that the consumers had become wasteful and extravagant in the use of gas to the extent that its business was being conducted at a loss, and, upon its application, the mayor and council passed an amendatory ordinance requiring all consumers to use gas at the meter rates and providing that each consumer should be required to deposit $3.50 as an advance payment, as security for the payment of gas to be taken, which amount was to be returned to the consumer when he ceased to take gas, if he was not indebted to the company for gas previously consumed. Within a few days more than thirty per cent of the electors petitioned the mayor and council to submit to the electors for their approval or rejection the proposed ordinance, which modified the conditions of the original franchise; but a majority of the members were opposed to this step, and the petition was denied.  On the motion of the attorney-general an alternative writ was allowed by this court, commanding the mayor and council to call an election and submit the ordinance to the electors for their approval or rejection or to show cause why it was not done.  They responded by a motion to quash the alternative writ, and insisted that under the law they were not required to submit, and would not be warranted in referring, the proposition to the electors.

The decision depends upon the application of a recent statute, and, if it does not control, the ordinance as passed is effectual without an approving vote of the electors.  Section 1 of chapter 93 of the Laws of 1909

provides that the mayor and council of a city of the second or third class may grant a twenty-year franchise to persons, companies or corporations to construct and operate plants to supply the inhabitants of the city with water, light, heat and power, "and . . . to contract for and fix maximum rates to the city and its inhabitants, reserving the right to make reasonable changes therein from time to time." It also provides that before any grant, franchise or contract, or renewal, shall be binding it shall be published for twenty days in the official newspaper of the city, and it further provides:

"That if thirty per cent of the qualified electors of any such city, based on the total vote cast for secretary of state at the last general election, shall, on or before thirty days from the first publication of such proposed contract or franchise, petition the mayor and city council to submit to the electors of such city for their approval or rejection such proposed grant, contract or franchise, it shall be the duty of such mayor and council to forthwith submit to the qualified electors of such city such proposed grant, contract or franchise, extension or renewal thereof, for their approval or rejection; provided, that when such petition is filed with the city clerk no signer thereon shall be permitted to withdraw his name therefrom. Fifteen days' notice of such election shall be given by publication in the official newspaper of such city, and such election shall be conducted in all respects as now provided by law for bond elections in such cities. And in case a majority of the electors of such city voting at such election shall vote in favor of the approval of such grant, contract or franchise, such grant, contract or franchise shall be of full force and effect and thereafter be binding upon such city; but if a majority of the electors voting at such election shall vote against the approval of such grant, contract or franchise, then the same shall become null and void. (Laws 1909, ch. 93, § 1, Gen. Stat. 1909, § 749.)

In behalf of the state it is contended that the proposed ordinance makes a substantial change in the franchise granted, and is a contract of as much im-

portance to the inhabitants of the city as the original one made between the city and the company. It is alleged in the alternative writ that it takes away from the consumers the option to purchase gas at flat rates; that, under the flat rate, gas only cost the consumers about twelve and one-half cents per thousand cubic feet, whereas, under the meter rate, they will be required to pay eighteen cents per thousand for a period of two years, and twenty-two and one-half cents per thousand thereafter; that additional penalties are imposed, an advance payment is required, and other changes of conditions made. It is contended that this ordinance is, in effect, a new grant, or contract, and that the act contemplates that every contract between the city and the gas company relating to the supply of gas to the people is subject to approval or rejection, if the requisite number of electors ask for it. It is argued that the act makes no distinction between contracts made when the franchise is first granted or when it is about to expire and intervening ones. All that reach the dignity of a contract, whenever made, must be referred upon proper application. It is further contended that the price to be charged and paid for gas is the most important feature of the contract to both parties—more even than the right to the use of the streets or the duration of the franchise.

For the defendants, the contention is made that the referendum provision only applies to the franchise granted and contract made in the first instance or to some renewal or extension of the franchise. These general grants, it is urged, are made for twenty years or some specific period less than twenty years, and they are subject to approval or rejection by the electors. An extension or renewal of such general franchise likewise comes under the referendum provision of the statute, but, whether it be in the original grant or in the extension or renewal of it, there is the specific res-

ervation in behalf of the people that reasonable changes may be made in the rates from time to time. The schedule of rates prescribed in any franchise is not to be taken as binding on the parties for the whole life of the franchise, but is rather subject to change or amendment by the mayor and council whenever, under existing conditions and circumstances, it may be reasonably required. The original ordinance itself provided that the mayor and council had the power, and it was made their duty, to enact all needful rules and regulations to protect the company in its rights under the franchise, and it is argued that the waste of gas under the flat rate justified a regulation to stop that waste, and that the ordinance passed is a proper exercise of the power conferred.

The court holds with the contention of the defendants that it was not the intention of the legislature that a mere change of rates, made under the reserved power intrusted to the mayor and council, which may be frequently exercised, and in many cases where only slight modifications will be made, should be submitted to the electors of the city for their approval or rejection. The purpose was to refer to the electors the general grant which prescribed the duration of the franchise and the conditions under which the streets and public grounds may be used, and other conditions regulating the duties and obligations of the respective parties during the life of the franchise or any renewal or extension of such franchise. The city, however, is not concluded in the matter of rates by that grant, but the power to change these rates from time to time, as circumstances may justify, is reserved to the mayor and council alone.

The writer is unable to agree with this interpretation of the statute, and is of the opinion that the act of the legislature contemplated that upon proper petition any "grant, franchise or contract" between the city and the company supplying gas is to be submitted

The State v. Redding.

to the electors for approval or rejection. No distinction is made between a contract and a franchise or a grant, and no contractual feature of the grant of a franchise to supply gas to the inhabitants of the city is of greater consequence to the city or the company than the one fixing the price which the consumer must pay for gas.

The decision of the court is that a change of rates is not a regulation or a matter for the approval or rejection of the electors, and that as the ordinance in question only relates to the making of rates the peremptory writ is denied.

JOHNSTON, C. J., dissents, stating his reasons in the opinion.

BENSON, J. (dissenting) : I concur in the dissent of the chief justice contained in the foregoing opinion of the court. The effect of the judgment is to allow the council to strike out the flat rates and compel the consumers to accept the use of the meter and assume additional burdens, while the company is relieved of important conditions. The provision for flat rates and other conditions of the original contract changed by the new ordinance were deemed material by the parties when the contract was made, and the court can not say that they are any less material now. The changes proposed are in rates and also in the conditions provided for the distribution and use of gas, and, as I read the law, are subject to approval or rejection by the voters.

Mr. Justice Smith concurs in this dissent.